# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **M. PATRICIA CANTU and** | § | |
| **ROBERTO CANTU,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AUSTIN POLICE DEPARTMENT,** | § | |
| **BRIAN MANLEY, ERIN TRUHO,** | § | |
| **MICHAEL JOSEPH, JACOB** | § | |
| **BEIROWSKI, ROBERT** | § | **Case No. 1:21-CV-00084-LY-SH** |
| **MATTINGLY, LUIS ALBERTO** | § | |
| **CAMACHO, III, KYLE PETERSON,** | § | |
| **JULIAN PADRO-MARTIN,** | § | |
| **CHRISTOPHER J. KNODEL,** | § | |
| **CITY OF AUSTIN, TEXAS, REY** | § | |
| **ARELLANO, FARAH C.** | § | |
| **MUSCADIN, TRAVIS COUNTY** | § | |
| **MEDICAL EXAMINER'S OFFICE,** | § | |
| **and DR. VICKIE L. WILLOUGHBY** | § | |
| *Defendants* | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:    THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants' Motion to Dismiss, filed April 15, 2021 (Dkt. 18);

Defendants Travis County Medical Examiner's Office and Dr. Vickie L. Willoughby's Motion to

Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6), filed April 28, 2021 (Dkt. 22); and the associated

response and reply briefs.[1]

---

[1] On April 30, 2021, the District Court referred all pending and future motions in this case to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules"). Dkt. 23. The pending motions to withdraw as attorney (Dkts. 35 and 36) will be addressed in a separate order.

## I.   Background

Plaintiffs Patricia and Roberto Cantu bring this civil rights action seeking damages for injuries they allegedly sustained from the death of their son, Paul Cantu ("Cantu"), in an officer-involved shooting in Austin, Texas on January 29, 2019. Dkt. 1 ¶¶ 1.1, 3.1. Plaintiffs allege that the Austin Police Department ("APD") used excessive force in arresting their son after he wrecked his car. *Id.* ¶ 3.1. Plaintiffs assert that APD officers mistook Cantu for a suspect in a car chase they had been pursuing the previous day. *Id.* ¶¶ 5.1, 6.11.

The APD officer who responded to the wreck, Sergeant Michael Joseph, allegedly pointed a gun at Cantu after he emerged from his vehicle holding a cell phone and a flashlight. *Id.* ¶ 3.1. Plaintiffs allege that Cantu complied with Joseph's orders to drop the items he was holding and kneel on the ground. *Id.* ¶ 3.2. Joseph then called for assistance, bringing approximately 50 APD officers to the scene, including Officer Kyle Peterson. *Id.* ¶ 3.4. Plaintiffs allege that Peterson used a Taser on Cantu without first giving a proper verbal warning. *Id.* ¶¶ 3.4, 6.37. Plaintiffs further allege that, while Cantu was on the ground, APD Officers Robert Mattingly and Luis Alberto Camacho III shot him more than twenty times. *Id.* ¶¶ 3.5, 6.44. Plaintiffs claim that APD Officers physically assaulted Cantu with Tasers after he was shot and denied him immediate medical care. *Id.* ¶¶ 6.50-6.51, 6.54. Plaintiffs further allege that Cantu was unarmed, and that any gun recovered from the scene must have been planted. *Id.* ¶¶ 3.6, 6.39, 6.56.

Emergency Medical Services transported Cantu to Saint David's South Austin Medical Center. Plaintiffs allege that APD Officers Julian Padro-Martin and Christopher Knodel wrongfully informed medical staff that Cantu was a "John Doe," even though they had his wallet containing his identification and a card with emergency medical information. *Id.* ¶ 6.58. Cantu died after emergency surgery. *Id.* ¶ 6.61. Officers Padro-Martin and Knodel allegedly gave permission to

harvest Cantu's organs despite possessing his driver's license showing he was not an organ donor. *Id.* ¶¶ 6.62-6.64.

Cantu's body was transferred to the Travis County Medical Examiner's Office, where Dr. Vickie L. Willoughby performed an autopsy. *Id.* ¶ 8.10. Plaintiffs allege that Dr. Willoughby failed to include in her autopsy report all instances of Taser use on Cantu's body. *Id.* Plaintiffs also allege that Dr. Willoughby wrongfully allowed Cantu's organs to be harvested, sent the wrong file to the funeral home, and attempted to send the wrong body. *Id.*

On January 27, 2021, Plaintiffs, acting *pro se*, filed suit under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"). In their 44-page complaint, Plaintiffs allege that APD officers used excessive force against Cantu, in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs also allege that APD violated Title II of the ADA by intentionally failing to provide Cantu with reasonable accommodations during his arrest, which denied him the benefits of the City of Austin's programs and services. Plaintiffs further allege that the Travis County Medical Examiner's Office and Dr. Willoughby wrongfully denied them rights relating to their son's autopsy.

Defendants the City of Austin, Brian Manley, Rey Arellano, Farah Muscadin, Erin Truho, Julian Padro-Martin, and Christopher Knodel (collectively, the "City of Austin Defendants") ask the Court to dismiss Plaintiff's Section 1983 claims for failure to state a claim under Rule 12(b)(6). Defendants the Travis County Medical Examiner's Office and Dr. Willoughby (collectively, the "TCMEO Defendants") seek dismissal for lack of standing and failure to state a claim.

## II.    Legal Standards

A party seeking to challenge the court's subject-matter jurisdiction to hear a case may file a motion under Rule 12(b)(1). *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). When a Rule 12(b)(1) motion is filed in conjunction with other motions

under Rule 12, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### A.  Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and may exercise only such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n*, 143 F.3d at 1010. "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B.  Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation

omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### C.  Section 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Claims under Section 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395

(5th Cir. 2009). It is well established that a municipality or a local governmental unit is not liable under Section 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). A municipality is liable under Section 1983 for its officers and employees' actions when they are executing an official policy or custom. *Piotrowski*, 237 F. 3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

### III.    City of Austin's Motion to Dismiss Section 1983 Claims

Plaintiffs allege that APD had a pattern or custom of "racially profiling and discriminating against minority suspects such as Hispanics and people with disabilities like Paul Cantu by using unwarranted excessive force and deadly force at disproportionally higher rates." Dkt. 1 ¶ 8.8. Plaintiffs allege that this custom culminated in the death of Cantu, rendering the City of Austin liable for the defendant APD officers' actions under Section 1983. *Id.* Plaintiffs further allege that APD failed to properly train its officers. *Id.*

The City of Austin Defendants argue that Plaintiffs have not sufficiently pled that any APD policy or training failure caused a violation of Cantu's constitutional rights. The City also asserts that Plaintiffs have alleged no facts to support their Section 1983 claims against former Police Chief Brian Manley, Assistant City Manager Rey Arellano, Director of Police Oversight Farah C. Muscadin, APD Detective Erin Truho, Officer Julian Padro-Martin, and Officer Christopher Knodel. The City of Austin Defendants do not argue that Plaintiffs' allegations are insufficient to plead constitutional violations under the Fourth and Fourteenth Amendments. The Court therefore addresses only Plaintiffs' allegations regarding municipal liability.

## A.  Municipal Liability

To establish municipal liability under Section 1983, a plaintiff must plead facts that plausibly establish (1) an official policy (2) promulgated by the municipal policymaker (3) that was the "moving force" behind the violation of the constitutional right. *Piotrowski*, 237 F.3d at 578. The City of Austin Defendants contend that Plaintiffs have failed to adequately plead the official policy and nexus elements for municipal liability.

### 1.  Official Policy

An official policy can include written policy statements, ordinances, or regulations, as well as a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d at 841. A policy or custom is official when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Municipal liability claims based on a local government's customs generally require that the plaintiff demonstrate a pattern of conduct, because "one act is not itself a custom." *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). A pattern also requires sufficiently numerous prior incidents, not isolated instances. *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Factual allegations concerning one or two incidents involving similarly situated defendants are insufficient to demonstrate a widespread custom or practice. *Bolton v. City of Austin*, No. A-17-CA-00077-SS, 2017 WL 2799313, at *3 (W.D. Tex. June 26, 2017) (citing *Prince v. Curry*, 423 F. App'x 447, 451 (5th Cir. 2011)).

Plaintiffs allege that APD had a pattern or custom of "racially profiling and discriminating against minority suspects such as Hispanics and people with disabilities like Paul Cantu[2] by using unwarranted excessive force and deadly force at disproportionally higher rates." Dkt. 1 ¶ 8.8. In support of their claims against the City of Austin, Plaintiffs list URLs for five videos on YouTube.com and one post on the website of the Austin American-Statesman newspaper. *Id.* As stated above, the Court's review on a motion to dismiss is limited, in relevant part, to the complaint and any documents attached to the complaint. *Lone Star Fund*, 594 F.3d at 387. Merely providing a web address or hyperlink is insufficient to submit documents to the Court or make them of record.

Plaintiffs also quote in their Complaint what they represent as an April 10, 2019 post on the website of the alternative weekly newspaper The Austin Chronicle, which in turn cites The Atlantic magazine and an APD racial profiling report. Dkt. 1 ¶ 8.8. The Austin Chronicle post states that APD officers are "more likely to use injury-causing force against drivers they pull over than any other large Texas jurisdiction," and that "Hispanic drivers represented the majority of people searched (44%) after being pulled over, even though white drivers were pulled over at a higher rate (47%)." *Id.* The post does not report incidents of APD officers using excessive force against Hispanic or disabled individuals.

The City of Austin Defendants contend that: "Any argument that the subjects of these videos and articles constitutes a pattern tantamount to official policy fails" because they do not show a "persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Dkt. 18 at 4 (quoting *Piotrowski*, 237 F.3d at 570). The Court agrees. Plaintiffs have not pled any facts showing the existence of an unwritten custom or

---

[2] Plaintiffs allege that Cantu suffered from seizures, severe asthma, and other medical conditions. Dkt. 1 ¶¶ 6.13, 6.20.

policy regarding the use of excessive force against Hispanic and disabled individuals by APD. Factual allegations regarding racial profiling or discrimination arising from Cantu's arrest are insufficient to support the imposition of municipal liability. *See Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) ("[P]lausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' [Plaintiffs] must do more than describe the incident that gave rise to [their] injury." (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)). Accordingly, the undersigned Magistrate Judge recommends that Plaintiff's Section 1983 claims against the City of Austin be dismissed.

### 2.   Failure to Train

Plaintiffs also claim that the City of Austin inadequately trained its officers. Dkt. 1 ¶ 8.8. The City of Austin Defendants argue that Plaintiffs have failed to plead any factual allegations supporting their failure-to-train claim. Dkt. 18 at 7-8.

"Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." *Anderson v. Marshall Cnty.*, 637 F. App'x 127, 134 (5th Cir. 2016) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). To avoid dismissal of a Section 1983 failure-to-train claim, a plaintiff must plead sufficient facts to show that: (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a moving force in causing the constitutional violation; and (3) the municipality was deliberately indifferent in adopting its training policy. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010).

There are two means of proving deliberate indifference. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, 386-92 (1989)). First, in the proof-by-pattern method, deliberate indifference can be found if municipal employees violate constitutional rights so often that it can be inferred from the pattern of violations that the need for further training must have been plainly obvious to the policymakers. *Id.* This proof-by-

pattern method is "ordinarily necessary to establish municipal culpability and causation." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).

Second, deliberate indifference may be found through a single incident if a plaintiff can prove that the highly predictable consequence of a failure to train would result in the specific injury suffered. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). This narrow, single-incident exception generally is reserved for cases in which the government actor was provided no training whatsoever. *Peña*, 879 F.3d at 624. For example, if a policymaker "opts to provide no training whatsoever to police officers concerning the established and recurring constitutional duty not to use excessive deadly force, a factfinder may reasonably infer that the [municipality] acted with the requisite deliberate indifference." *Littell*, 894 F.3d at 625. To plead *Monell* liability under a single-incident exception, "a plaintiff must allege factual content showing (or from which it may be inferred) that the training provided by the municipality was so inadequate that it should have predicted that those deficiencies would have caused the specific harm alleged, not that more or different training would have prevented it." *Hutcheson v. Dallas Cnty.*, No. 3:17-cv-2021-BN, 2020 WL 1692950, at *6 (N.D. Tex. Apr. 7, 2020), *aff'd*, 994 F.3d 477 (5th Cir. 2021).

In support of their inadequate training claim, Plaintiffs rely on the YouTube videos discussed above and the following quote:

> "APD Sergeant and Officers' training is consistent with such a fundamental misunderstanding of the law and generally accepted police practices regarding use of deadly force, it would support a conclusion that the training provided by the Austin Police Department to its officer[s] is dangerous and unreasonable." Jeffrey J. Noble, Expert Witness in Cases of Police Brutality and use of deadly force by APD officers.

Dkt. 1 ¶ 8.8. Even if the Court were to find these allegations sufficient to satisfy the first and second elements of a failure-to-train claim, Plaintiffs have not pled sufficient facts to state a claim for deliberate indifference. To survive a motion to dismiss, Plaintiffs must plead facts showing that

the City of Austin was deliberately indifferent in adopting inadequate training procedures and allege with specificity how a particular training program is deficient. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). Plaintiffs' Complaint does not contain allegations of any previous incidents of the misuse of deadly force; thus, their allegations do not support a proof-by-pattern finding of deliberate indifference to inadequate training. *See* Dkt. 1 ¶¶ 8.8-8.10; *Dobbins v. City of Dallas*, No. 3:20-cv-1727-K, 2021 WL 4395817, at *7 (N.D. Tex. June 24, 2021), *R. & R. adopted*, 2021 WL 3781927 (N.D. Tex. Aug. 25, 2021) (dismissing failure-to-train claim because plaintiff failed to allege a pattern of similar violations). Nor do Plaintiffs allege that the City of Austin provided its officers no training under the single-incident exception. *See Ayon v. Austin Indep. Sch. Dist.*, No. 1:19-CV-586-RP, 2020 WL 1536383, at *7-8 (W.D. Tex. Mar. 31, 2020) (dismissing failure-to-train claim under single-incident exception where plaintiff did not allege complete failure to train). Rather, Plaintiffs allege that APD officers were insufficiently trained regarding the use of deadly force, which renders the single-incident exception inapplicable. *See* Dkt. 1 ¶ 8.8; *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 596-97 (W.D. Tex. 2020) (dismissing failure-to-train claim because single-incident exception was inapplicable where pleading suggested some training provided). Accordingly, the undersigned recommends that Plaintiffs' failure-to-train claim under Section 1983 be dismissed.

### B. Individual City Defendants

In addition to the City of Austin and the Austin Police Department, Plaintiffs also assert claims against several individual city employees and former employees, addressed below.

#### 1. Former Austin Police Chief Brian Manley

Plaintiffs allege that former Austin Police Chief Brian Manley obstructed justice by not releasing to Plaintiffs (1) a video of the incident taken by a third party, and (2) "other important Police Records." Dkt. 1 ¶ 6.73. The City of Austin Defendants argue that the Court should dismiss

Plaintiffs' Section 1983 claim against Manley because "Plaintiffs offer no details of how they requested these items or how Manley's actions constitute an 'obstruction of justice.'" Dkt. 18 at 8. Plaintiffs do not address Defendants' arguments in their Response; instead, they assert that Manley should be liable "in his supervisory capacity of subordinates all APD Officers involved in the Officer Involved Shooting (OIS) of Paul Cantu, violated Plaintiff's son Paul Cantu's and Plaintiffs' federal civil rights, and that Chief of APD Brian Manley should be liable for subordinates (APD Officers') conduct." Dkt. 19 at 11. Plaintiffs thus attempt to hold Manley liable under a theory of *respondeat superior*, which is inappropriate under Section 1983. *Monell*, 436 U.S. at 694.

To state a Section 1983 claim for failure to supervise, a plaintiff must show that: (1) the supervisor failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference. *Estate of Davis*, 406 F.3d at 381. A claim for failure to supervise is evaluated in the same manner as a claim for failure to train. *Id.*

Plaintiffs have not pled any facts supporting a failure-to-supervise claim against Manley; instead, they merely argue that Manley failed to supervise his subordinate officers and therefore should be held liable. Such conclusory allegations do not meet the pleading standards of Rule 8(a)(2). *See Iqbal*, 556 U.S. at 678 (stating that a pleading which only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8(a)(2)). Plaintiffs also fail to address the City of Austin Defendants' arguments regarding their "obstruction of justice" claim against Manley and explain how their allegations state a claim for relief. *See Stritzinger v. Verizon Corp.*, No. 1:13-CV-682-LY, 2014 WL 12591741, at *1 (W.D. Tex. Jan. 3, 2014) (granting motion to dismiss). Accordingly, the undersigned recommends that the claims against Brian Manley be dismissed.

**2. City of Austin Assistant City Manager Rey Arellano and Director of Police Oversight Farah Muscadin**

Plaintiffs bring claims against "Representatives from City of Austin Rey Arellano, Assistant City Manager, and Farah C. Muscadin, Director of Austin Office of Police Oversight for failure to report, investigate, post complain[t]s in their websites and discrimination against Hispanics and people with Disabilities." Dkt. 1 ¶ 1.1. The City of Austin Defendants argue that Plaintiffs have alleged no facts to support their claim against Arellano and Muscadin. Plaintiffs respond that Arellano and Muscadin are liable for failure to supervise APD officers. Dkt. 19 at 15-16.

Plaintiffs' single, conclusory allegation against Arellano and Muscadin does not satisfy the requirements of Rule 8. *Iqbal*, 556 U.S. at 678. Plaintiffs' argument for failure-to-supervise liability also fails because Plaintiffs have not pled facts showing deliberate indifference. *Goodman*, 571 F.3d at 396 (stating that failure to show deliberate indifference in failure-to-train claim eliminated need to address other prongs of supervisory liability); *Estate of Davis,* 406 F.3d 375 at 382 (same). Accordingly, the undersigned recommends that the Section 1983 claim against Rey Arellano and Farah C. Muscadin be dismissed.

**3. Detective Erin Truho**

Plaintiffs bring a claim against "Detective Erin Truho (Special Unit Investigator) for interfering with the Certified Autopsy Records of Paul Cantu." Dkt. 1 ¶ 1.1. Plaintiffs provide no additional facts to support this conclusory allegation against Truho or explain how Truho's actions rise to the level of a constitutional violation. Dkt. 19 at 16-17. Accordingly, the undersigned recommends that the Section 1983 claim against Erin Truho be dismissed.

**4. Officers Julian Padro-Martin and Christopher J. Knodel**

Plaintiffs allege that Officers Julian Padro-Martin and Christopher J. Knodel delayed Cantu's medical treatment at St. David's South Austin Medical Center by not providing his driver's license,

insurance card, and emergency medical information card to staff. Dkt. 1 ¶ 6.58. Plaintiffs allege that the officers chose not to provide Cantu's information to hospital staff "to impede proper medical treatment and cause his death." *Id.* Plaintiffs also allege that the officers gave permission to harvest Cantu's organs despite having his driver's license showing he was not an organ donor. *Id.* ¶ 6.64. The City of Austin Defendants argue that Plaintiffs have failed to allege that the officers were deliberately indifferent to the medical risk to Cantu, as required to state a claim under Section 1983. Dkt. 18 at 10.

Delaying medical care can constitute a constitutional violation if the official knows substantial risk of serious harm exists, disregards that risk, and the delay results in substantial harm. *Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018); *Batyukova v. Doege*, No. 5:19-cv-00391-JKP, 2019 WL 5579547, at *4 (W.D. Tex. Oct. 29, 2019) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). To show a defendant acted with deliberate indifference to medical risk, a plaintiff must show that a defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiffs have alleged that Officers Padro-Martin and Knodel possessed critical medical information regarding Cantu that they deliberately withheld from the medical personnel. Dkt. 1 ¶¶ 6.58-6.59. Plaintiffs further allege that the officers' decision to withhold that information delayed and impeded Cantu's treatment, resulting in his death. *Id.* ¶ 6.60 ("Paul was given the wrong plasma products during an emergency blood transfusion because there was no time to test his blood, while his blood type and allergies were listed in his emergency card which APD officers had in their hands . . . ."). Because Plaintiffs' allegations are taken as true at this stage of the

proceedings, Plaintiffs have stated a constitutional violation against Officers Padro-Martin and Knodel sufficient to support a Section 1983 claim. Accordingly, the undersigned recommends that the City of Austin's motion to dismiss as to Officers Padro-Martin and Knodel be denied.

## IV.   Travis County Medical Examiner's Office Defendants' Motion to Dismiss

The Court next addresses the motion to dismiss filed by the remaining defendants, the Travis County Medical Examiner's Office and Dr. Vickie L. Willoughby. Plaintiffs allege that the TCMEO Defendants engaged in conduct during and after their son's autopsy that violated their constitutional rights. Dkt. 1 ¶ 8.10. The TCMEO Defendants argue that Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) or, in the alternative, for failure to state a claim under Rule 12(b)(6).

### A.  Standing

Article III of the Constitution confines the federal judicial power to the resolution of "cases" and "controversies." U.S. CONST. art. III, § 2. For there to be a case or controversy under Article III, the plaintiff must have a "personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To establish standing, a plaintiff must show that: (1) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury was likely caused by the defendant; and (3) the injury likely would be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC*, 141 S. Ct. at 2203 (internal quotation marks omitted).

The TCMEO Defendants assert that Plaintiffs lack standing because "Plaintiffs' claims are based upon a non-existent federal right relating to their son's autopsy," and Plaintiffs cannot demonstrate a causal connection between any alleged injury and their actions. Dkt. 22 at 4. The

TCMEO Defendants' jurisdictional arguments are a direct attack on the merits of Plaintiffs' claims. If the challenge to jurisdiction "is also a challenge to the existence of a federal cause of action," a district court should assume that jurisdiction exists and "deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) (relying on *Bell v. Hood*, 327 U.S. 678, 682 (1946)). "So long as a complaint is drafted to seek recovery directly under the Constitution or laws of the United States, a failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Stem v. Gomez*, 813 F.3d 205, 209-10 (5th Cir. 2016) (quoting *Bell*, 327 U.S. at 681-82). The Supreme Court also has explained that "the nonexistence of a cause of action [is] no proper basis for a jurisdictional dismissal." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998). Accordingly, dismissal under Rule 12(b)(1) would be improper. *Stem*, 813 F.3d at 210 (holding that district court erred in dismissing plaintiff's Section 1983 claims for lack of jurisdiction where jurisdictional arguments went to the merits).

### B.  Section 1983 Claims

The TCMEO Defendants argue that Plaintiffs' Section 1983 claims against Dr. Willoughby in her official and individual capacities should be dismissed for failure to state a claim because Plaintiffs have not pled any cognizable constitutional violation. Dkt. 22 at 6-8. They further argue that Plaintiffs have not identified any official policy or custom to support the imposition of municipal liability. *Id.* Finally, the TCMEO Defendants assert that Plaintiffs' claims against the Travis County Medical Examiner's Office should be dismissed because it cannot be sued as an independent entity. *Id.* at 8. Before considering whether the Travis County Medical Examiner's Office can be held liable for Dr. Willoughby's alleged actions, the Court first must determine whether Plaintiffs have sufficiently pled a constitutional violation.

"After death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived." *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979). Because Dr. Willoughby's alleged actions or omissions took place after Cantu's death, the Court considers Plaintiffs' constitutional rights as next of kin. Plaintiffs state in their Response that their Section 1983 claims against TCMEO Defendants are based on alleged violations of the First and Fourteenth Amendments.[3] Dkt. 26 at 2.

### 1. First Amendment

In their response, Plaintiffs assert a First Amendment violation relating to the coordination of Cantu's funeral arrangements. Dkt. 26 at 2. Plaintiffs allege that "Defendants sent the wrong file and attempted to send the wrong body to the funeral home." *Id.* at 14. Plaintiffs claim these activities were "premeditated." *Id.* Plaintiffs further allege that the TCMEO Defendants "impeded [them] to provide prompt Christian Burial to [their] son Paul Cantu by refusing to release his body promptly after his autopsy was complete and twice (2) threatening to cremate his body." *Id.* at 19. Plaintiffs' Complaint contains these factual allegations, but does not cite the First Amendment. Dkt. 1 ¶ 8.10.

Texas law requires medical examiners to hold an inquest "when any person is killed; or from any cause dies an unnatural death, except under sentence of law." TEX. CODE CRIM. PRO. ANN. art. 49.25 § 6 (West 2021). The medical examiner has the authority to perform an autopsy if she deems it necessary. *Id.* § 9(a). Plaintiffs argue that the TCMEO Defendants' alleged delay in releasing Cantu's body for burial until Dr. Willoughby completed the autopsy violated their First Amendment right to free exercise of religion. Dkt. 26 at 19. However, Plaintiffs do not allege that

---

[3] To the extent Plaintiffs' Complaint alleges a Fourth Amendment violation against the TCMEO Defendants, it fails to state a claim. *Love v. Bolinger*, 927 F. Supp. 1131, 1136 (S.D. Ind. 1996) (stating that next of kin have no Fourth Amendment rights regarding an autopsy performed on deceased relative).

Dr. Willoughby conducted Cantu's autopsy outside her authority under a facially neutral state law mandating autopsies for all unnatural deaths. *See Kickapoo Traditional Tribe of Tex. v. Chacon*, 46 F. Supp. 2d 644, 654 (W.D. Tex. 1999) (finding that Texas statute authorizing autopsies did not violate First Amendment, although procedure delayed burial in contravention of religious custom and belief); *see also Taylor v. Zumwalt*, No. 04-905 WJ/DJS, 2005 WL 8163606, at *5 (D.N.M. Oct. 14, 2005) (finding no First Amendment violation in misidentification and cremation of body after state-mandated autopsy, in contravention of next of kin's religious beliefs). Accordingly, Plaintiffs have not stated a First Amendment violation, and the undersigned recommends their Section 1983 claim against the TCMEO Defendants be dismissed.

### 2. Fourteenth Amendment

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755 (2005). Claims for both procedural and substantive due process can arise from the Due Process Clause. A government violates procedural due process when it acts without appropriate safeguards to protect individual property interests. *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). A government violates substantive due process when it deprives an individual of constitutional rights by an arbitrary use of its power. *Simi Inv. Co. v. Harris Cnty.,* 236 F.3d 240, 249 (5th Cir. 2000).

When the basis of a plaintiff's Section 1983 claim is a violation of either type of due process, the plaintiff first must allege that the government deprived them of a property right. *Roth,* 408 U.S. at 577. Section 1983 does not create property rights; it provides a remedy for violations of federal rights created elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In *Arnaud v. Odom*, the Fifth Circuit addressed whether the next of kin's quasi-property rights under state law could form the basis for due process violations actionable under Section 1983. *Arnaud v. Odom*, 870 F.2d 304 (5th Cir. 1989). The plaintiffs, parents whose deceased children

18

had undergone state-mandated autopsies, sued the Lafayette Parish Deputy Assistant Coroner who "performed grisly controlled experiments" on the infants' bodies after their autopsies. *Id.* at 306. The district court dismissed the plaintiffs' Section 1983 claims, finding that they had failed to plead a due process violation. The Fifth Circuit affirmed and held that plaintiffs had not been deprived of either procedural or substantive due process rights. With regard to procedural due process, because an "adequate state postdeprivation process" was available to remedy their injuries under Louisiana law, plaintiffs "had not suffered a constitutional invasion of any property right pursuant to section 1983." *Id.* at 309. The Fifth Circuit also declined to extend the constitutional interests protected by substantive due process to include a right of "an individual to be free from state-occasioned mutilation of the body of a deceased relative." *Id.* at 310.

Here, Plaintiffs allege that Dr. Willoughby harvested tissues from Cantu's body without their consent.[4] Dkt. 1 ¶ 8.10. Under Texas law, the next of kin possess "quasi-property rights in the body of a deceased person" and may bring a tort action for negligent mishandling of a corpse. *Evanston Inc. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 383 (Tex. 2012); *see also SCI Tex. Funeral Servs., Inc. v. Nelson*, 540 S.W.3d 539, 546 (Tex. 2018) (recognizing common law cause of action for negligent mishandling of a corpse); *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011) (stating that mental anguish damages may be recovered in tort action for acts are performed on a decedent's body or tissues without consent). Because Texas law provides a process to remedy their alleged injuries, Plaintiffs have not stated a claim for a procedural due process violation. Nor do Plaintiffs' allegations state a violation of substantive due process because the next of kin have no

---

[4] Plaintiffs allege that both Saint David's South Austin Medical Center medical staff and Dr. Willoughby performed the organ harvest. Dkt. 1 ¶¶ 6.62, 8.10. The TCMEO Defendants argue that the inconsistent factual allegations are grounds for dismissal. Dkt. 22 at 7. The Federal Rules of Civil Procedure allow a plaintiff to plead alternative theories of recovery, even if those theories are based on inconsistent allegations of fact. FED. R. CIV. P. 8(d)(3).

constitutional right "to possess the body of a loved one in the same condition as the body was at death." *Arnaud*, 870 F.2d at 311.

Plaintiffs' allegations regarding Cantu's burial also do not state a constitutional violation. Plaintiffs allege that the TCMEO Defendants made multiple mistakes and delayed Cantu's burial for several days. Dkt. 1 ¶ 8.10. Plaintiffs, however, do not allege that the Travis County Medical Examiner's Office failed to provide Cantu's body for burial or otherwise prevented them from directing its final disposition. *See Evanston,* 370 S.W.3d at 385 (stating that, under Texas law, next of kin have no right to possess a body other than for burial and final disposition).

The remainder of Plaintiffs' allegations relate to the thoroughness of the autopsy and the circumstances under which it was conducted. Dkt. 1 ¶ 8.10. Plaintiffs have not stated a claim for a fundamental interest in a forensic death investigation carried out in the manner  they prefer and have not alleged any property interest relating to Cantu's autopsy that would support a due process violation.

### C.  Conclusion as to the Travis County Medical Examiner's Office Defendants

Because Plaintiffs have failed to plead facts stating a due process violation, the Court recommends that Plaintiffs' Section 1983 claims against the TCMEO Defendants based on the Fourteenth Amendment be dismissed for failure to state a claim. Also, because Plaintiffs have not pled a constitutional deprivation against the TCMEO Defendants, the Court need not address whether Plaintiffs can bring a Section 1983 claim against the Travis County Medical Examiner's Office as a separate entity. *See Estate of Carmichael ex rel. Carmichael v. Galbraith*, No. 3:11-CV-0622-D,  2012 WL 13568, at *5 (N.D. Tex. Jan. 4, 2012) (stating that failure to plead constitutional violation requires dismissal of Section 1983 claim).

Case 1:21-cv-00084-LY-SH   Document 39   Filed 11/30/21   Page 21 of 22


## V.     Request for Leave to Amend

In their Responses, Plaintiffs seek leave to file an amended complaint if the Court finds their pleadings deficient. Dkt. 19 at 4; Dkt. 26 at 2-3. Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872-73 (5th Cir. 2000).

Plaintiffs have not offered any additional facts they would plead to cure the deficiencies in their Section 1983 claims against the City of Austin, Brian Manley, Rey Arellano, Farah Muscadin, Erin Truho or the TCMEO Defendants. Dkt. 19 at 4; Dkt. 26 at 2. Without proposed amendments, the Court is unable to assess whether amendment is warranted. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required where movant fails to apprise court of facts movant would plead in amended complaint to cure any deficiencies). Accordingly, Plaintiffs' request for leave to amend should be denied.

## VI.     Recommendations

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss (Dkt. 18). The Court **RECOMMENDS** that the District Court **GRANT** the Motion and **DISMISS** with prejudice Plaintiff's Section 1983 claims against the City of Austin, Brian Manley, Rey Arellano, Farah Muscadin, and Erin Truho for failure to state a claim under Rule 12(b)(6). The Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion as to Plaintiffs' Section 1983 claims against Julian Padro-Martin and Christopher J. Knodel.

The Court **RECOMMENDS** that the District Court **GRANT** Defendants Travis County Medical Examiner's Office and Dr. Vickie L. Willoughby's Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6) and **DISMISS** with prejudice Plaintiffs' Section 1983 claims against the Medical Examiner's Office and Dr. Willoughby for failure to state a claim under Rule 12(b)(6).

The Court **RECOMMENDS** that Plaintiffs' Request for Leave to Amend be **DENIED**.

In addition to the Section 1983 claims against Officers Julian Padro-Martin and Christopher J. Knodel, Plaintiffs' Section 1983 claims remain pending against Officers Michael Joseph, Jacob Beirowski, Robert Mattingly, Luis Alberto Camacho III, and Kyle Peterson. Plaintiffs' ADA claim against the Austin Police Department also remains pending.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 30, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE